23-mj-00057-MJM

_____ ✓ FILED  _____ ENTERED
_____ LOGGED  _____ RECEIVED

4:35 pm, Jan 20 2023

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY  _____ Deputy

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Special Agent Keith Murray, being duly sworn, depose and state that:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search and seizure warrant authorizing the seizure and
examination of property, specifically one black Metro PCS cellphone, identified in Attachment A
currently in located at the Baltimore County Detention Center, and the extraction from that
property of electronically stored information as described in Attachment B.

2.      I am an investigative or law enforcement officer of the United States within the
meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States
who is empowered by law to conduct investigations and to make arrests for Interstate
Threatening Communications, in violation of 18 U.S.C. § 875(c) ("Target Offense"), as well as
for Fed. R. Crim. P. 41 purposes.

3.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have
been so employed since July 2017.  I am currently assigned to the Baltimore Field Office of the
FBI and have worked matters involving Civil Rights violations to include Hate Crimes, Federally
Protected Activities, Damage to Religious Property, and Criminal Interference with Rights to
Fair Housing.  I have conducted numerous Civil Rights trainings to colleges and universities and
to police municipalities across the state of Maryland.

4.      I have received extensive training in interview and interrogation techniques, arrest
procedures, and the preparation and execution of search and seizure warrants.  I have conducted
and assisted in public corruption investigations in various capacities.  As a Special Agent, I have
written and executed multiple search warrants and have planned and executed multiple arrest

operations.  I have participated in the seizure of evidentiary items, the transport of defendants, and testified in court proceedings.

5.      The statements contained in this Affidavit are based in part on: information provided by other agencies, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; independent investigation; and my experience, training, and background as a Special Agent with the FBI.  Because this Affidavit is being submitted for the limited purpose of establishing probable cause to believe that DAVID LEE BRADBY, committed the below-described offense, and used the Metro PCS cellphone to commit said offenses, I have not included every detail of the investigation.  In addition, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part.  The following is true to the best of my knowledge and belief.

6.      Your affiant knows from his training and experience in investigating Civil Rights Violations that social media and other internet-based communications platforms such as Instagram, Facebook and TextNow are often used as primary communicating/messaging services by individuals committing these crimes.  Further, your affiant knows from his training and experience that messages exchanged on these platforms contain text, audio, video, and photographic images that are used to communicate in furtherance of criminal acts, and to share photographs of the fruits and instrumentalities of those crimes.

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit there is probable cause to believe that David Lee Bradby (hereinafter **"BRADBY"**) committed violations of 18 U.S.C. § 875(c): Interstate Threatening Communications, by using several TextNow accounts to send text messages to VICTIM 1, an African-American woman residing in the state of West Virginia, in which he posed as another man, Jeremy Micheal [sic] Stratton,[1] and threatened to commit violent acts against VICTIM 1 and her relatives, expressly and by making references to the Klu Klux Klan.  Further, there is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

9.      The facts and circumstances alleged in this Affidavit occurred in part within the District of Maryland.  More specifically, the defendant, DAVID LEE BRADBY, resides within the city limits of Baltimore, Maryland.

10.      Victim 1 is an African-American female who resides in Martinsburg, West Virginia, with her husband.  Victim 1 received racially biased and threatening messages from several phone numbers from February, 2022 to May, 2022.  The first message was received on February 13th, 2022.  Victim 1 was at her residence in Martinsburg, West Virginia when she received the threatening messages.

11.      On February 13, 2022, at 5:47 pm, Victim 1 received a text message to her personal cell phone from phone number **404-947-3986 ("Target Phone #1")** that she considered to be a threat.  The message is depicted below:

---

[1] As indicated in the communications, the sender used the name Jeremy Micheal [sic] Stratton." As will be made clearer later in the affidavit, with the exception of a misspelled middle name, this name is similar to a known person named Jeremy Michael Stratton.



12.     On or about February 15, 2022, at 10:00 pm, Victim 1 received the same message again to her cell phone.  The message was sent from the same telephone number, **Target Phone #1**.  On February 16, 2022, at 3:03 pm, Victim 1 received the same message again to her cell phone from the same phone number, **Target Phone #1**.  Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening messages.

13.     On February 26, 2022, at 10:13 am, Victim 1 received another threatening message on her personal cell phone.  The content of the message was the same as the prior three (3) messages but the new message was sent from phone number **443-582-3324 ("Target Phone #2")**.  Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening message

14.     On March 20, 2022, at 1:39 am, Victim 1 received another threatening message on her personal cell phone.  The content of the message was the same as the prior messages but the latest message was sent from phone number **443-333-7570 ("Target Phone #3")**.   On April

3, 2022, at 12:30 pm and on April 5, 2022, at 1:59 am, Victim 1 received the same message from **Target Phone #3.** Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening messages

15.     On April 14, 2022, at 6:59 pm, Victim 1 received another threatening message on her personal cell phone.  The content of the message was the same as the prior messages but the new message was sent from phone number **443-488-6093 ("Target Phone #4")**.   On April 21, 2022, at 11:21 pm, Victim 1 received the same message from **Target Phone #4**.  Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening messages.

16.     On April 30, 2022, at 10:14 pm, Victim 1 received another threatening message on her personal cell phone.  The content of the message was the same as the prior messages but the new message was sent from phone number **443-342-5445 ("Target Phone #5")**.   On May 15, 2022, at 6:56 pm, Victim 1 received the same message from **Target Phone #5**.  Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening messages.

17.     On May 24, 2022, at 11:56 pm, Victim 1 received another threatening message on her personal cell phone.  The content of the message was the same as the prior messages but the new message was sent from phone number 443-583-8576 **("Target Phone #6").**  Victim 1 was at her home residence in Martinsburg, West Virginia when she received the threatening message.

**Investigative Steps**

18.     **Target Phone #1** was run through the Electronic Telephone Network Services (ETNS) database.  Query results revealed the phone was registered to Bandwith, a software and communications company.

19.     On March 7, 2022, a Federal Grand Subpoena was served to Bandwith for all subscriber information relating to **Target Phone #1**.   On March 9, 2022, Bandwith told the FBI that the Grand Jury Subpoena needed to be issued to TextNow, an internet based communications service.

20.     On March 23, 2022, a Federal Grand Jury Subpoena was served to TextNow for all subscriber information and IP logs relating to **Target Phone #1**.   On March 23, 2022, TextNow provided the following information was provided to the FBI regarding **Target Phone #1**.  Target Phone #1 is registered to email address: williammaglidt@gmail.com, registration date: 10-09-2021 16:06:59 UTC, registration IP: 72.81.240.47.  The account was owned and operated by this user from the date range of 2/8/2022 to 2/26/2022.

21.     On April 8, 2022, TextNow provided the following information was provided to the FBI regarding **Target Phones #2 and #3**.   Both **Target Phone #2** and **Target Phone #3** are registered to email address: williammaglidt@gmail.com, registration date 10-09-2021 16:06:59 UTC, registration IP: 72.81.240.47.  All subscriber information for **Target Phone #2** and **Target Phone #3** is identical to **Target Phone #1**.

22.     On May 10, 2022, TextNow provided the following information to the FBI regarding **Target Phone #4.  Target Phone #4** is registered to email address: williammaglidt@gmail.com, registration date: 10-09-2021 16:06:59 UTC, registration IP: 72.81.240.47.

23.     On June 7, 2022, TextNow provided the following information to the FBI regarding **Target Phone #5.  Target Phone #5** is registered to email address: williammaglidt@gmail.com, registration date: 10-09-2021 16:06:59 UTC, registration IP: 72.81.240.47.

24.     On June 7, 2022, TextNow provided the following information to the FBI regarding **Target Phone #6.  Target Phone #6** is registered to email address: williammaglidt@gmail.com, registration date: 10-09-2021 16:06:59 UTC, registration IP: 72.81.240.47.  A list of IP addresses and corresponding dates and times for log in attempts to the account were also provided.

25.     On April 5, 2022, Google provided the following subscriber information to the FBI in response to a Federal Grand Subpoena regarding the email account williammaglidt@gmail.com which was used to create the TextNow accounts:  Name: Jeremy Mitchell, Google Account ID: 517882698790.   Google also provided the IP address for 55 login and logout attempts for the account.

26.     The messages sent to Victim 1 identified a particular individual, "Jeremy Micheal Stratton" as the sender.  A search of the database Clear using "Jeremy Michael Stratton" and "Maryland" as search terms returned the following results: Jeremy Michael Stratton, home address: 6278 Danville Avenue, Dundalk, MD, 21222, MD state ID# MD4034546.

27.     Additionally, the 12-digit numbers listed on the threatening messages appeared related to a Maryland Soundex number.  The 12 digits, "363 402 603 898," were run through the Maryland Soundex database and resulted in the following biographical information: Jeremy Michael Stratton, home address 6728 Danville Avenue, Dundalk, MD, 21222.  Thus, it appears the individual who sent the text message included Jeremy Michael Stratton's driver's license number in the threatening messages.

28.     On May 13, 2022, TextNow provided call detail records, text messages, and IP dates and times for **Target Phone #1**, **Target Phone #2**, and **Target Phone #3**.

29.     TextNow provided five (5) log in IP addresses for **Target Phone #3** for March 18, 2022.  The information for the five (5) log ins are:

| Date: | Time: | IP address: |
|---|---|---|
| 3/18/2022 | 17:01:52 UTC | 192.12.14.1 |
| 3/18/2022 | 17:01:53 UTC | 192.12.14.1 |
| 3/18/2022 | 17:01:58 UTC | 192.12.14.1 |
| 3/18/2022 | 17:01:59 UTC | 192.12.14.1 |
| 3/18/2022 | 17:02:44 UTC | 192.12.14.1 |

30.     An analysis of the aforementioned IP addresses revealed that IP address **192.12.14.1** is registered to the following Internet Service Provider – Johns Hopkins University, Baltimore, MD, 21218.

31.     On May 17, 2022, your affiant interviewed William Bunch with the Johns Hopkins Public Safety Department.  Bunch advised that on March 18, 2022, BRADBY was observed on internal security cameras inside Johns Hopkins Hospital walking through the hallways.  BRADBY was placing flyers under office doors soliciting for escorting services.  , Carolyn Bradby, BRADBY's aunt confirmed to William Bunch that the male seen in the security camera footage was in fact BRADBY.

32.     On April 13, 2022, Donald Leatherwood with the Maryland Department of Public Safety Correctional Services (DPSCS) informed your affiant that during an April 13, 2022, check-in with his probation officer, BRADBY provided a contact number of 813-693-2808.

33.     On June 7, 2022, TextNow provided the following subscriber information and log-in information for number 813-693-2808:  Username: rbcbradby.  Name: Rbc Bradby.

Registration date: 9/30/2021.  TextNow also provided IP addresses with corresponding dates and times for log in attempts to the account.

34.     An analysis of the IP log in attempts for both **Target Phone #6** and for phone number 813-693-2808 revealed the following:  on May 25, 2022, the IP addresses for login attempts for the entire day for both **Target Phone #6** and **813-693-2808** are listed as **98.204.44.6**.  However, at no point are both TextNow phone numbers logged in at the same time. The accounts are always either several seconds or several minutes apart suggesting that the two numbers are on one physical device, but the user is switching back and forth between accounts.

35.     An open source search of the IP address **98.204.44.6** revealed that is owned by Comcast LLC.   Comcast LLC, responded to a Grand Jury subpoena for IP address **98.204.44.6** showing it is registered to Divine Light Inc., Baltimore, at 612 N Monroe Street, Baltimore, MD.

### Jeremy Stratton, Barbara Potyraj, and David Lee Bradby

36.     A review of Baltimore County Police Reports, open source database checks, social media platforms and interviews revealed the following information:   Jeremy Michael Stratton and Barbara Potyraj have two (2) children together and were in a relationship until September, 2022.  Stratton and Potyraj lived at 2008 Wareham Road, Dundalk, MD. Throughout the course of their relationship and prior to their most recent breakup, Stratton and Potyraj had small periods of time during which they were not together.  Potyraj still currently resides at 2008 Wareham Road, Dundalk, MD.

37.     Investigators learned that Potyraj and BRADBY also had a relationship of sorts. According to the database Accurint and Facebook photos taken from inside his home and posted to the Facebook account "*Rbc Bradby*,", BRADBY's residence for a period of time was 612 N Monroe Street, Baltimore, MD.  On one occasion in November 2021, BRADBY posted a photo

of snowfall outside his residence.  The photo depicts two street signs at an intersection, N.

Monroe Street and Arunah Avenue.  This intersection is located directly across the street from

612 N. Monroe Street.  During a June 16, 2022 interview, Potyraj confirmed that she visited

BRADBY at 612 N Monroe Street, Baltimore, MD in 2021.

38.     Baltimore County Police Reports revealed that on July 7, 2018, a fire was started

at 6728 Danville Avenue, Dundalk, MD.  Stratton and Potyraj were inside the residence at the

time of the fire.  Prior to the start of the fire, Potyraj received a text message from BRADBY

stating, "oh your ignoring me, I can fix that now!"  After realizing a fire had started at the home,

Stratton exited the residence and saw an individual who he recognized as BRADBY running

away from the residence.  The fire caused significant damage to the residence.  No individuals

were arrested in connection with the fire.

39.     A criminal history/NCIC query for BRADBY resulted in the following

information.  BRADBY has been arrested and charged with various crimes dating back to 2012.

Those charges include but are not limited to: Assault in the 2nd degree (2012) for which he was

convicted and sentenced to two (2) years' probation; Burglary in the 1st, 3rd, and 4th degree

(2018) for which he was convicted of Burglary in the 1st degree and sentenced to ten years'

incarceration, all 10 years suspended; Possession of a deadly weapon with the intent to injure

(2019); and Sexual contact in the 4th degree, Assault in the 2nd degree, and Making Electronic

Harassing Communications (2021) for which he is still pending trial.

## Other Parties

40.     Jeremy Stratton's minor sister had a relationship with the minor child of William

Maglidt – the name used in the email address of the Google account used to register the

TextNow phone numbers.  On September 19, 2021, Baltimore County Police officers responded

to 6728 Danville Avenue, Dundalk, MD for a report of a disturbance, involving Jeremy

Stratton's sister and William Maglidt's minor child.  William Maglidt was on scene during the

incident, suggesting a connection between William Maglidt and Jeremy Stratton.

41.     In July 2021, Stratton moved out of the residence at 2008 Wareham Road,

Dundalk, MD after temporarily ending his relationship with Potyraj.  In September 2021, the

minor child of William Maglidt visited Potyraj at 2008 Wareham Road, Dundalk, MD.  After

visiting Potyraj, the minor child left the residence but left a cell phone behind.

42.     In late September 2021, BRADBY was released from jail and messaged Potyraj

that he was bored and wanted to hang out.  BRADBY visited Potyraj at 2008 Wareham Road,

Dundalk, MD.  Potyraj believes BRADBY found the cell phone left by the minor child

(containing the email account williammaglidt@gmail.com) and took it, along with Jeremy

Stratton's driver's license.

43.     In October 2021, Stratton moved back in with Barbara at 2008 Wareham Road,

Dundalk, MD.

**Facebook Posting**

44.     I believe the facebook account "Rbc Bradby" is registered to BRADBY.  This

account posts photos of an individual matching the physical description of BRADBY.  The

photos were compared to BRADBY's Maryland Vehicle Administration (MVA) driver's license

photo.

45.     On January 28, 2022 – about three weeks before the threatening text messages to

Victim 1 began, the following message was posted to the Facebook account "Rbc Bradby":

> **"Jeremy Stratton is a Rat...Keep making fake emails...stalking my**
>
> **pages...williammaglidt@gmail.com  Jeremystretton666@gmail.com"**

11

The post includes the email address williammaglidt@gmail.com, the same email address that was used to create the TextNow accounts responsible for sending threatening messages to Victim 1.

46.     As previously noted, Google provided IP addresses for all log-in and log-out attempts for the williammaglidt@gmail.com account.  46 of the 55 IP addresses pinged off a cell tower in the vicinity of BRADBY's suspected residence at the time, 612 N Monroe Street, Baltimore, MD – supporting my belief that BRADBY controls the williammaglidt@gmail.com account.

47.     Below the message referenced in paragraph 47 above, but a part of the same Facebook post, was a screenshot of a test message exchange, provided below:



The content of the message appears to show BRADBY using a TextNow account to impersonate Jeremy Stratton.  At the time of this posting, Roderick Johnson was listed as Maryland's Most

Wanted by the United States Marshals Service for the murder of his sister.  I believe that
BRADBY was posting an image of a fake attempt to "SWAT" Stratton at that address; that is, to
send law enforcement to an address under false pretenses in order to cause harm.

48.     The FBI conducted an open-source search of "TextNow message chat" and
analyzed the resulting images.  The images match the description of the above referenced text
message chat that was posted by Facebook account "Rbc Bradby" on January 28, 2022.  Below
is an example of an image search result for a TextNow message:



The image depicted above is not an actual text chat but an advertisement from the TextNow website depicting a representative screenshot of what a TextNow chat looks like. The format, the colors, and the control icons located at the top of the screenshot are identical to the message chat posted by the Facebook account "Rbc Bradby" on January 28, 2022, suggesting that "Rbc Bradby" is utilizing TextNow to send messages.

### Seizure of Phone

49.     On July 15, 2022, **BRADBY** self-surrendered to the Baltimore County Police Department due to multiple outstanding warrants for his arrest. At the time of his arrest, **BRADBY** had several items on his person, to include a Black Metro PCS cell phone. The cell phone, along with **BRADBY**'s other belongings, were checked into the Baltimore County Detention Center on July 15, 2022.

50.     On December 15, 2022, your affiant was notified by Baltimore County Police that **BRADBY**'s cell phone was located with his personal belongings at the Baltimore County Detention Center located at 720 Bosley Avenue, Towson, MD. A copy of BRADBY's Inmate Property Inventory was provided to your affiant.

### Electronic Storage and Forensic Analysis

51.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools

52.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device

14

was used, the purpose of its use, who used it, and when.  There is probable cause to believe that
this forensic electronic evidence might be on the Device because:

        a.      Data on the storage medium can provide evidence of a file that was once
on the  storage medium but has since been deleted or edited, or of a deleted portion of a file
(such as a paragraph that has been deleted from a word processing file). Forensic evidence on a
device can also indicate who has used or controlled the Device.  This "user attribution" evidence
is analogous to the search for "indicia of occupancy" while executing a search warrant at the
residence.

        b.      A person with appropriate familiarity with how an electronic device works
may, after examining this forensic evidence in its proper context, be able to draw conclusions
about how electronic devices were used, the purpose of their use, who used them, and when.

        c.      The process of identifying the exact electronically stored information on a
storage medium that are necessary to draw an accurate conclusion is a dynamic process.
Electronic evidence is not always data that can be merely reviewed by a review Team and passed
along to investigators.  Whether data stored on a computer is evidence may depend on other
information stored on the computer and the application of knowledge about how a computer
behaves.  Therefore, contextual information necessary to understand other evidence also falls
within the scope of the warrant.

        d.      Further, in finding evidence of how a device was used, the purpose of its
use, who used it, and when, sometimes it is necessary to establish that a particular thing is not
present on a storage medium.

      53.    *Nature of examination*.  Based on the foregoing, and consistent with Rule
41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent

with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

54.     Manner of execution.  Because this warrant seeks only permission to examine a device that is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>**Conclusion**</u>

55.     Based on a review of this case, and based on my knowledge and experience with Civil Rights Investigations, I, as your Affiant, submit that there is probable cause to believe that BRADBY committed the offenses of Interstate Threatening Communications, in violation of 18 U.S.C. §§ 875 (c). I further submit that there is probable cause to believe that a search of the device identified and described in Attachment A will reveal evidence of those crimes in the information sought to be seized as described in Attachment B.

Respectfully Submitted,

*Keith Murray*

Keith Murray, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d), this  5th  day of January, 2023.

Honorable Matthew J. Maddox
United States Magistrate Judge

16

## <u>ATTACHMENT A</u>

The property to be seized and searched is a black Metro PCS cell phone (hereinafter, "Device").  The device is currently located at the Baltimore County Detention Center located at 720 Bosley Avenue, Towson, MD, 21204, within the personal belongings of David Lee Bradby.

.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. 875 (c) (Interstate Threatening Communications) and involve DAVID LEE BRADBY:

   a.   Electronic mail, chat logs, electronic messages, text messages, documents, correspondence, records, receipts, notes, ledgers, records of Internet Protocol addresses used;

   b.   Records of internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine and records of user-typed web addresses;

   c.   Any and all records and information from social media accounts, including but not limited to Facebook Messenger, Instagram, Snapchat, and TextNow;

   d.   Photographs, images, memes, cartoons, videos, and other recordings relating to evidence of violations of 18 U.S.C. 875 (c) (Interstate threatening communications);

   e.   Electronic records, receipts, bank statements and records, including stocks and bonds, letters of credit, bank receipts, and other items recording financial activity;

   f.   Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents and browsing history;

   g.   Evidence indicating the Device's user's state of mind as it related to crimes under investigation;

   h.   Evidence concerning the identity and/or contact information of the person(s) who communicated with the Device's user about matters relating to the crime under investigation.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.      Any of the items described in paragraphs 1 through 3 above which are stored in the Device in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of a computer-related equipment, including floppy diskettes, fixed hard drives, or removable hard disk cartridges, software or memory in any form. The search procedure of the electronic data contained in the computer operating software or memory devices shall include the following techniques **which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant:**

a.   surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files;

b.   "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c.   "scanning" storage areas to discover and possibly recover recently deleted files;

d.   "scanning' storage areas for deliberately hidden files; or

e.  performing key word **or other search and retrieval** searches through all
electronic storage areas to determine whether occurrences of language contained
in such storage areas exist that are immediately related to the subject matter of
the investigation.

5.  This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys or the government and their support staff for their independent review.  With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.  If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.  The investigative team will take no further steps regarding any review of information so segregated absent further order of the court.  The investigative team may continue to review any information not segregated as potentially privileged.

6.      If after performing these procedures, the directories, files or storage areas do not reveal evidence of interstate threatening communications or other criminal activity, the further search of that particular directory, file or storage area, shall cease.